UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EARTHA BROOKS, d/b/a MRS. PIZZA EXPRESS, Inc., <br><br> Plaintiff, <br><br> v. <br><br> SERVICE AMERICA CORPORATION d/b/a CENTERPLATE, <br><br> Defendant. | CASE NO. C05-1468JLR <br><br> ORDER |

## I. INTRODUCTION

This matter comes before the court on Defendant's motion for summary judgment (Dkt. # 21). The parties have not requested oral argument. Having reviewed the motion, Plaintiff's response, and all documents filed in support and opposition, the court GRANTS Defendant's motion for the reasons stated below.

## II. BACKGROUND

Defendant operates under the name "Centerplate" and provides consolidated concession services at Safeco Field, where the Seattle Mariners play their home games. Plaintiff Eartha Brooks operates Mrs. Pizza Express, Inc. ("Mrs. Pizza"). In the Spring of 2000, Ms. Brooks, on behalf of her company, entered into a contract to sell pre-made uncooked pizzas to Centerplate. See Rosen Decl., Ex. A (the "Agreement"); Brooks

ORDER – 1

Decl. at 1-2.[1]  Pursuant to the Agreement, Ms. Brooks agreed to "supply products and labor to produce an uncooked cheese pizza . . . ."  Rosen Decl., Ex. A.  Centerplate agreed to pay Mrs. Pizza $1.13 per uncooked pizza, and further "[e]stimated game day usage" of 2,000 pizzas per game.  Id.  Ms. Brooks agreed to provide the pizzas to Centerplate through October 2000.  Id.

During Mariners' home games in April and May 2000, Centerplate sold Mrs. Pizza's pizzas at concession stands.  In a May 25, 2000 letter, Centerplate prematurely terminated the Agreement because of complaints from Mariners management about the quality of the pizzas.  See Austin Decl., Ex. 3.  This dispute followed.

Ms. Brooks originally brought suit against Centerplate in King County Superior Court on July 22, 2005, claiming breach of contract, discrimination, negligence, and unfair businesses practices.  Centerplate removed the case to this court and filed a motion to dismiss all of Ms. Brooks' claims, except for breach of contract.  In response to Centerplate's motion, Ms. Brooks voluntarily dismissed some of her claims.  In its November 22, 2005 order, the court dismissed the remaining claims, leaving only Ms. Brooks' claim for breach of contract.  See November 22, 2005 Order (Dkt. # 12).

In moving for summary judgment, Centerplate argues, inter alia, that Ms. Brooks' claim for breach of contract is untimely.

## III.  ANALYSIS

In examining a motion for summary judgment, the court must draw all inferences from the evidence in the light most favorable to the non-moving party.  Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is proper where

---

[1] At the time she entered into the pizza supply Agreement, Ms. Brooks also entered into a separate agreement with Centerplate to provide staff for some of the concession stands at Safeco Field.  See Rosen Decl., Ex. D.  That agreement is not at issue.  See Rosen Decl., Ex. B (Brooks Dep. at 78).

ORDER – 2

there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the opposing party must show that there is a genuine issue of fact. Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The opposing party must present significant and probative evidence to support its claim or defense. Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). For purely legal questions, summary judgment is appropriate without deference to the non-moving party.

**A.   Ms. Brooks' Claim is Untimely Under the Washington Uniform Commercial Code.**

Centerplate argues that the Ms. Brooks' action for breach of contract is time-barred under Washington's Uniform Commercial Code ("UCC"). The UCC governs contracts concerning "transactions in goods." RCW 62A.2-102. Goods are defined as "all things" that are "movable at the time of identification to the contract for sale" other than money, investment securities, and "things in action." RCW 62A.2-105. Food manufactured for sale and human consumption falls within the definition of goods. See e.g. Baum v. Murray, 162 P.2d 801, 803 (Wash. 1945) (treating sausages as goods under the sales statute, a predecessor to the UCC); see also Alaska Indep. Fishermen's Mktg. Ass'n v. New England Fish Co., 548 P.2d 348, 349 (Wash. Ct. App. 1976) (treating fisherman's catch as goods under the UCC).

Ms. Brooks does not contest that pizzas are goods under the UCC. Instead, she argues that the UCC is inapplicable because the main purpose of the Agreement was the labor or services that Mrs. Pizza supplied to Centerplate in preparing the uncooked pizzas. See Resp. at 4. Ms. Brooks fails to cite any legal authority in support of her

ORDER – 3

position. Even assuming that the Agreement constituted a mixed contract for goods and services, the undisputed evidence indicates that the predominant purpose of the Agreement was not the labor provided by Ms. Brooks but the pizzas. Washington courts apply the predominant factor test to determine whether the UCC governs a mixed contract for the sale of goods and labor:

> [S]ervices 'always play an important role in the use of goods, whether it is the service of transforming the raw materials into some usable product or the service of distributing the usable product to a point where it can easily be obtained by the consumer'. . . . 'The test for inclusion or exclusion [under the UCC] is not whether they [contracts] are mixed, but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved (e.g., contract with artist for painting) or is a transaction of sale, with labor incidentally involved (e.g., installation of a water heater in a bathroom).'

Tacoma Athletic Club, Inc. v. Indoor Comfort Sys., Inc., 902 P.2d 175, 178-79 (Wash. Ct. App. 1995) (adopting predominant factor test) (quoting Bonebreak v. Cox, 499 F.2d 951, 958-59 (8th Cir. 1974)). In Tacoma Athletic, the court considered whether a contract for the sale and installation of a dehumidification system for an indoor swimming pool was a contract for the sale of goods or services. Id. at 179-80. In applying the predominant factor test, the court held, that based on negotiations emphasizing the product and the language of the agreement, the contract's predominant purpose was the sale of goods. Id.

The classification of a contract under the predominant factor test is a question of fact. Id. at 179. In the instant case, the relevant facts are either admitted or undisputed. The Agreement between Centerplate and Mrs. Pizza refers to both products and labor: Centerplate agreed to "utilize the professional services of Mrs. Pizza Express to produce a proprietary product, specifically gourmet pizzas. Mrs. Pizza Express will supply products and labor to produce uncooked cheese pizza on site, at our facility." See Rosen

ORDER – 4

Decl., Ex. A. Even so, Ms. Brooks' own testimony demonstrates that the focus of the Agreement was her provision of pizzas to Centerplate. Ms. Brooks testified, "I entered into a contract . . . to supply ready made pizzas . . . . The contract did not provide for me to sell the pizza, only to supply the uncooked pizza . . . . My contract was to supply 2,000 pizzas for each game for the 2000 season." Brooks Decl. at ¶¶ 2-3. Moreover, the parties agreed that Centerplate would provide payment per pizza not, for instance, per hour of labor expended. See Rosen Decl., Ex. A; Brooks Decl. at ¶ 4. Ms. Brooks fails to submit material evidence to raise a genuine issue of fact concerning the character of the Agreement. The undisputed evidence demonstrates that the predominant purpose of the Agreement was the sale of pizzas. The Agreement, therefore, is governed by the UCC.

For a breach of contract action under the UCC, the statute of limitations is four years "after the cause of action has accrued." RCW 62A.2-725(1). "Accrual" occurs at the time of breach. RCW 62A.2-725(2). It is undisputed that Centerplate terminated the Agreement with Ms. Brooks by letter dated May 25, 2000. Austin Decl., Ex. 3. Under RCW 62A.2-725(2), the four-year statute of limitations was triggered on this date. Ms. Brooks did not commence her action against Centerplate until July 22, 2005, over five years after Centerplate terminated the contract. Ms. Brooks' claim for breach of contract is therefore time-barred.

## IV.  CONCLUSION

For the foregoing reasons, the court GRANTS Centerplate's motion for summary judgment (Dkt. # 21).

Dated this 9th day of January, 2007

*[signature]*

JAMES L. ROBART
United States District Judge

ORDER – 5